## Case No. 8,921.

### McPHERSON v. FOSTER.

[4 Wash. C. C. 45.] [1]

Circuit Court, E. D. Pennsylvania. April Term, 1821.

EXECUTION SALES—LAND—ERRONEOUS DESCRIPTION—SUMMARY RELIEF—CALL OF DEED—NATURAL OBJECTS.

1. A sale had been made by the marshal, under an erroneous description of the premises,

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

and was set aside. "The court, exercising under the long established practice of the state courts, as well as of this court, a kind of mixed jurisdiction, will afford a similar relief. If the case were complicated, and especially if there were contradictory evidence, the court might think it most proper to rerer the parties to a more formal trial of their rights, on the law or equity side of the court, as might be selected. But no such objections arise in this case to prevent the court from granting relief in a summary way."

2. There is no principle of land law more firmly settled in this, and probably most of the states, in respect to country lands, than this: that where the calls of a deed or other instrument are for natural, or well known artificial objects, both course and distance, when inconsistent with such calls, must give way and be disregarded. This rule is founded upon the soundest reason and good sense, and is equally so in its application to town lots.

[Cited in Riley v. Griffin, 16 Ga. 141.]

At law.

Mr. Binney, for the rule.

Mr. Ewing, against it.

WASHINGTON, Circuit Justice. This case comes before the court upon a rule to show cause, why so much of the marshal's sale as regards a three story brick house and lot, in the borough of Carlisle, should not be set aside. The facts are, that under a fieri facias, issued upon a judgment obtained by the plaintiff against the defendant in this court, certain property was levied upon, amongst which was a house and lot, the sale of which has given rise to this rule. It is thus described in the schedule annexed to the execution, and referred to in the return; "levied on a three story brick house, and part of a lot of ground on Hanover street, in the borough of Carlisle, in the county of Cumberland, containing in breadth on the said Hanover street thirty feet, and extending in length or depth two hundred and forty feet, to an alley adjoining the bank of Carlisle; and other property." The lot, thus described, was afterwards condemned by an inquisition; was ordered to be sold by a venditioni exponas: and was so advertised and sold in the city of Philadelphia, and the purchase money paid to the marshal. Kelker, the deputy marshal, who made the levy, deposes that, at the time he made it, the defendant gave him a verbal description of this property, which corresponded with that stated in the advertisement; that he told the defendant the sale would take place in Carlisle, where it could be put up agreeably to any description which might then be furnished him; that he afterwards informed the defendant that the sale was advertised to be made in Philadelphia, of which the defendant said he had heard, and that he then objected to the description of the property, and to the place of sale, and either then, or at some other time before the sale, showed the witness a diagram of the property, as he wished it to be sold, by which the lot in question appears to run back from Hanover

street, one hundred feet, to a five foot alley adjoining the lot, on which is the bank of Carlisle. This witness further deposes, that at the sale, he put up this lot as running one hundred feet back; to which some persons present objected. But he does not say whether the objection induced him to make any, or what alteration in that description. It further appears, that under the above execution, a lot and stone building thereon, called the tavern lot, adjoining the above, and belonging to the defendant, was levied upon; but it was not sold. It is fully proved by the depositions, and it is also shown by the diagram exhibited upon this trial, that if the lot in question, which was sold. were to be extended two hundred and forty feet in depth, it would take in about one hundred and nine feet of ground, and nearly the whole of a large stone stable, standing on it, which since the year 1795, has been annexed to, and held and enjoyed by the occupants of the tavern lot, the loss of which, and also of three alleys with which the tavern lot communicates, and which would be the consequence of so extending the lot sold, would greatly impair the value of the tavern lot. At the time of the levy and sale, the tavern lot and stable, as laid down in the diagram, were in the possession of Mr. Armor, as a tenant to the defendant, and had been so for more than three years preceding. Upon these facts, it is perfectly clear, that the lot upon which the levy was made, extended back no farther than the five foot alley, adjoining the bank of Carlisle; that that part of the lot, and no other, was condemned, advertised, offered for sale, or sold. It is true, that the other part of the description, in regard to the number of feet back, cannot be answered by stopping at the above alley, and that there is consequently, an irreconcilable discrepance in the description.

We are therefore of opinion, that if the case stood singly upon the levy, inquisition, venditioni exponas, advertisement, and public declaration of the deputy marshal at the time of the sale, the purchaser could claim, and at law could recover, of this lot, only so far back as to the five foot alley adjoining the bank lot. No more of the lot was, in fact. sold, or intended to be sold, even by the marshal. There has then, obviously, been a mistake in this transaction; which, unless it be corrected by the court, would operate to the injury of the defendant, or of the purchaser, on whichever of them it might be visited. The purchaser, in fact, bought only to the alley, and yet it is manifest that he supposed he was buying to the depth of two hundred and forty feet, so as to include the stable adjoining the tavern lot. The defendant, on the other hand, never intended so to arrange these lots as to rob the tavern lot of improvements and easements so essential to its value, for the purpose of adding them to the other lot, without increasing its value

in an equal degree. A court of equity, having such a case laid before it, would not hesitate to relieve the parties, or either of them, against the consequences of such a mistake, by setting aside the sale, unless the purchaser was willing to retain the property according to the boundaries, as they should be legally understood, that is, to the five foot alley. The court, exercising in this case under a long established practice of the state courts, as well as of this court, a kind of mixed jurisdiction, will afford a similar relief. If the case were complicated, and especially if there were contradictory evidence, the court might think it most proper to refer the parties to a more formal trial of their rights, on the law or equity side of the court, as might be selected. But no such objections arise in this case to prevent the court from granting relief in the summary way. We do not think that the purchaser is entitled either to interest, or to the costs of this motion, as he is. in truth, more benefited than the defendant, by having the sale set aside. We shall, however, permit the marshal to amend his return and the inquisition; the defendant's counsel having consented that he may do so, so as to extend the lot in question to the five foot alley. Rule made absolute.